**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prudential Insurance Company of America, | No. CV-18-08320-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Bonnie Huizenga, *et al.*, | |
| Defendants. | |

At issue is Cross-Plaintiff Bonnie Huizenga's Renewed Motion for Summary Judgment (Doc. 100). The Court entered an Order (Doc. 103) requiring Cross-Defendant Dominik Spang to file a response by September 6, 2024, and warning him of the possible ramifications of not responding, but no response was filed.

## I.    BACKGROUND

This interpleader action is the consolidation of two related matters, CV-19-08122-PCT-DWL and CV-18-08320-PCT-JJT, which the Court consolidated under the latter case number. (Doc. 62.) The two remaining parties in this action, Huizenga and Dominik Spang, both claim they are the rightful beneficiaries to a life insurance benefit from Interpleader Plaintiff Prudential Insurance Company of America in the amount of $238,000.00, and a 401(k) retirement benefit from Interpleader Plaintiff Walmart 401(k) Plan in the amount of $69,680.85, both of which benefits arise from the death of Dirk Spang. Interpleader Plaintiffs have deposited the disputed funds with the Court.

The evidence shows that Cheri Johnson, the cousin of Dirk's then-deceased partner, took Dirk to the emergency room in early April 2018, at which time he was diagnosed with lung cancer. Johnson and Sondrea Liska, a close friend of Dirk's, took care of Dirk for the following two months, with Johnson becoming his medical power of attorney and Liska helping Dirk with his financial affairs. Dirk underwent chemotherapy, radiation, and other treatment for lung cancer. During this time, Dirk spoke to his siblings, including Dominik, who reside in Germany. Also during this time, Dirk stated he wanted to change the beneficiary for his Walmart 401(k) and Prudential life insurance benefits to his siblings, and he informed Johnson, Liska, and Dominik of this decision. The prior beneficiary, Huizenga, was an old friend of Dirk's, and Johnson and Liska were not acquainted with either Huizenga or Dirk's siblings. Liska took Dirk to Walmart to execute the change of beneficiary on his 401(k) plan, but Dirk could not remember the password to his 401(k) account, and Walmart later provided him a link so that he could change the password and access his account. Since at least April 2018, Dirk was suffering from short term memory loss as a result of the small cell carcinoma in his lungs and an associated condition called paraneoplastic syndrome—an autoimmune disorder affecting the nervous system.

On May 29, 2018, Dirk was in a car accident in which his car was T-boned, and he sustained injuries that included multiple bone fractures and a pelvic hematoma. At the hospital, he received 40 mg of Oxycodone but refused further pain medication. Liska states that, on May 30, 2018, Dirk directed her to change the beneficiary information on his behalf, for which he had given her the online access information. (Doc. 56, Liska Statement at 3.) Liska changed the beneficiary information on Dirk's behalf from Huizenga to Dominik Spang on June 6, 2018, and Dirk passed away on June 7, 2018.

By way of a Cross-Claim (Doc. 11), Huizenga challenges the beneficiary designation changes, claiming that Dirk did not have the capacity to make them, and she now seeks summary judgment.

. . .

. . .

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57

1    (holding that the plaintiff must present affirmative evidence in order to defeat a properly
2    supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045
3    (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on
4    conclusory allegations unsupported by factual data." (citation omitted)).

5    **II.    ANALYSIS**

6        After the Court entered judgment in favor of Dominik in this matter (Docs. 73, 75,
7    76), the Ninth Circuit Court of Appeals remanded the matter for further evidentiary
8    proceedings consistent with its Memorandum Decision (Doc. 80-1). An interpleader action
9    such as this is an equitable proceeding in which the Court normally acts as the factfinder.
10   *E.g.*, *Bynum v. Prudential Life Ins. Co. of Am.*, 7 F.R.D. 585, 586–87 (E.D.S.C. 1947). The
11   Ninth Circuit's Decision stated that the central remaining factual question before the Court
12   is whether, under Arizona law, Dirk had the capacity to act as principal in an agency
13   relationship with Liska on June 6, 2018. The only evidence presented in the original
14   summary judgment briefing by Huizenga—who under Arizona law has the burden to show
15   the change of beneficiary designation to Dirk's brother Dominik was invalid—was a
16   conclusory statement from Dr. Carrie Monroy as to capacity. The Ninth Circuit directed
17   this Court on remand to reconsider that statement—which by itself has minimal probative
18   value due to its conclusory nature—together with "[a]ny evidence the parties may offer
19   from witnesses with relevant knowledge at the proper time." (Doc. 80-1 at 4–5 (citing *In
20   re Walters' Estate*, 267 P.2d 896, 898 (Ariz. 1954) (finding the testimony of "nurses and
21   hospital employees" who witnessed a testator execute his will probative to the capacity
22   determination)).)

23       Consistent with the Ninth Circuit mandate, this Court reopened discovery for the
24   parties to obtain any available evidence as to Dirk's capacity to act as principal in an agency
25   relationship with Liska on June 6, 2018. In addition, the Court permitted the parties to file
26   renewed motions for summary judgment, and Plaintiff's Motion (Doc. 100) is now before
27   the Court. Because Dominik filed no response to the Motion, under Federal Rule of Civil

28

Procedure 56(e)(2), the Court will consider Huizenga's facts (Docs. 101–102) as undisputed for the purposes of her Motion.

Although there is no evidence that Dirk executed a durable power of attorney to delegate decision-making as to his beneficiary designations to Liska, an agency relationship can be formed under Arizona law without the existence of a durable power of attorney. *See In re Sky Harbor Hotel Props. LLC*, 443 P.3d 21, 23 (Ariz. 2019). As Huizenga states in her Motion (Doc. 100 at 7), "[a]n individual has capacity to act as principal in a relationship of agency if, at the time the agent takes an action, the individual would have capacity if acting in person." (Doc. 100 at 7 (citing Restatement (Third) of Agency ("Restatement") § 3.04; *In re Sky Harbor Hotel Props.*, 443 P.3d at 23 (noting Arizona follows the Restatement of Agency absent other controlling authority)).) However, unwritten agency relationships may terminate upon the incapacity of the principal. *Golleher v. Horton*, 715 P.2d 1225, 1229 (Ariz. Ct. App. 1985). Specifically, "[a]n individual principal's loss of capacity to do an act terminates the agent's actual authority to do the act," but "[t]he termination is effective only when the agent has notice that the principal's loss of capacity is permanent or that the principal has been adjudicated to lack capacity." Restatement § 3.08(1). Thus, the remaining factual questions in this case are whether, under Arizona law, Dirk still had the capacity to act as principal in an agency relationship with Liska on the day she changed the beneficiary designations, June 6, 2018, and if not, whether Liska had notice of Dirk's permanent loss of capacity.[1]

The capacity at issue here—that required to change beneficiary designations—is determined by evaluating the principal's testamentary capacity. (*See* Doc. 80-1.) As the Court set forth in its prior Order (Doc. 73), under Arizona law, a beneficiary designation is a type of "governing instrument," which Arizona law defines as "a deed, will, trust, insurance or annuity policy, account with pay on death designation, security registered in beneficiary form, [or] pension, profit sharing, retirement or similar benefit plan . . . ."

---

[1] In this Court's Order (Doc. 73) on Huizenga's prior motion for summary judgment, the Court examined Dirk's capacity at the time he allegedly decided to change the beneficiary designations—April or May 2018—instead of the day Liska executed the changes—June 6, 2018.

A.R.S. § 14-1201(27). Arizona law provides, "It is a rebuttable presumption that a person who executes a governing instrument is presumed to have capacity to execute the governing instrument and to have done so free from undue influence and duress." A.R.S. § 14-2712(B).

A party challenging the capacity of the person executing a governing instrument has the burden to show by a preponderance of the evidence, A.R.S. § 14-2712(D), that, at the time the instrument was executed, the person lacked either "(1) the ability to know the nature and extent of his property; (2) the ability to know his relation to the persons who are the natural objects of his bounty and whose interests are affected by the terms of the instrument; or (3) the ability to understand the nature of the testamentary act." *In re Estate of Killen*, 937 P.2d 1368, 1371 (Ariz. Ct. App. 1996). Evidence that the person was experiencing delusions or hallucinations, *id.* at 1373–74; *In re O'Connor's Estate*, 246 P.2d 1063, 1070 (Ariz. 1952); or was under the influence of medication affecting the person's cognitive abilities, *Walters' Estate*, 267 P.2d at 898; *In re Estate of Thorpe*, 732 P.2d 571, 577–78 (Ariz. Ct. App. 1986); may be relevant to the capacity determination. But "[t]estamentary capacity cannot be destroyed by showing a few isolated acts, foibles, idiosyncrasies, moral or mental irregularities or departures from the normal unless they directly bear upon and have influenced the testamentary act." *In re Stitt's Estate*, 380 P.2d 601, 603 (Ariz. 1963) (internal quotation and emphasis omitted); *see also In re Teel's Estate*, 483 P.2d 603, 605 (Ariz. Ct. App. 1971). Arizona courts apply a "specialized, 'close scrutiny,' standard of review in relation to the evidence and expert opinions" in a dispute over testamentary capacity to execute a governing instrument. *Estate of Thorpe*, 732 P.2d at 573.

In *Teel's Estate*, the Arizona Court of Appeals made clear that "[t]estamentary capacity is not the same as the ability to transact ordinary business" but rather is "determined objectively from the standpoint of the purpose to be accomplished." 483 P.2d at 605. Thus, for example, evidence of "mental sluggishness, impairment of memory,

childishness, eccentricities and physical infirmity" accompanying old age does not show a lack of testamentary capacity. *Id.*

Liska's change to Dirk's beneficiary designations on June 6, 2018, "occurred fifteen hours before Dirk's death while Dirk was in hospice care." (Doc. 80-1 at 5.) Huizenga now produces an expanded but unsworn statement from Dr. Monroy—Medical Director at Northland Hospice—that Dirk arrived at the Hospice on June 3, 2018, and died on June 7, 2018. (Doc. 101, Huizenga Statement of Facts ("HSOF"); Doc. 101 at 8, HSOF Ex. 1, Monroy Letter.) Supported by Dirk's Hospice records, Dr. Monroy states that Johnson checked Dirk into the Hospice because he "lacked decision making capacity" to check himself in—a finding that was affirmed on June 3, 2018, because he "continue[d] to experience short term memory loss and [did] not . . . have capacity for medical decision making due to this." (Monroy Letter.) Dr. Monroy also states that Dirk "experienced significant pain and required narcotic medication therapy, further affecting his cognitive function." (Monroy Letter.) The Hospice's Psychosocial Assessment of June 4, 2018, noted that Dirk's level of incapacitation was "Severe." (Doc. 101 at 41, HSOF Ex. 8.) Thus, Dr. Monroy concluded in her "professional opinion that [Dirk] did not possess the mental capacity to make the decision to change his beneficiary designations on his life insurance and retirement benefits on June 6, 2018, the day before his death." (Monroy Letter.)

As the Court noted *supra*, Dominik has not responded to Huizenga's Motion or presented any controverting evidence from Liska, Johnson, or any other source going to Dirk's testamentary capacity on June 6, 2018. In the absence of such evidence, the Court finds Dr. Monroy's expanded statement supported by the Hospice medical records to be sufficient to show by a preponderance of evidence that Dirk lacked the cognitive ability to understand the nature of a testamentary act, such that he lacked the testamentary capacity to change the beneficiary designations on June 6, 2018.

With respect to whether Liska had notice that Dirk lacked testamentary capacity on June 6, 2018, Huizenga proffers Liska's own statements regarding her heavy involvement in Dirk's care from April 2, 2018 until his death, including that she saw him "every day"

and she and Johnson were "in constant contact with the staff at Flagstaff Medical Center, the cancer and radiation center, the group home, and hospice." (Doc. 56.) Already by April 17, 2018, a psychological evaluation revealed Dirk had "difficulty expounding upon the reasons and logistics surrounding his desires," "vague and somewhat variable" long-term memory, and "severely impaired" short-term memory, all of which prevented him "from making informed decisions" about plans once discharged from the hospital. (Doc. 101 at 39, HSOF Ex. 7.) And the Hospice's Bereavement Assessment of June 4, 2018, noted that Liska was present and that Dirk was only somewhat responsive to simple "yes" or "no" questions. (Doc. 101 at 42, HSOF Ex. 8.) Huizenga has thus provided probative evidence that Liska had notice of Dirk's severe deficits in cognitive ability and memory by June 6, 2018.

Again, Dominik has provided no controverting evidence. As a result, the Court finds Huizenga has demonstrated by a preponderance of evidence that Liska had notice of Dirk's lack of testamentary capacity on June 6, 2018, which terminated her authority to make the changes to his beneficiary designations. Accordingly, Huizenga is entitled to summary judgment on her Cross-Claim challenging the June 6, 2018 changes to Dirk's beneficiary designations.

**IT IS THEREFORE ORDERED** granting Cross-Plaintiff Bonnie Huizenga's Renewed Motion for Summary Judgment (Doc. 100).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter final Judgment that Bonnie Huizenga is entitled to $238,000.00, representing the death benefits due under a life insurance policy on the life of Dirk Spang issued by Prudential Insurance Company of America, deposited with the Court on September 12, 2019 (Doc. 61), plus any accrued interest. Bonnie Huizenga is also entitled to $69,680.85, representing the retirement benefits due as a consequence of the death of Dirk Spang under a Walmart 401(k) Plan, deposited with the Court on August 30, 2019 (Member Case No. CV-19-08122-PCT-JJT, Doc. 46), plus any accrued interest.

. . .

**IT IS FURTHER ORDERED** that the finance division of the Clerk of Court shall forthwith dispense the interpleader funds identified above in the amount of $238,000.00 (Doc. 61) and $69,680.85 (Member Case No. CV-19-08122-PCT-JJT, Doc. 46), plus any accrued interest, to Bonnie Huizenga pursuant to the Judgment of the Court.

**IT IS FURTHER ORDERED** that Bonnie Huizenga shall, as soon as practicable, provide to the finance division of the Clerk of Court all documentation and information the Clerk of Court will require to effectuate disbursement to her of the interpleaded funds together with any accrued interest.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this matter.

Dated this 1st day of November, 2024.

Honorable John J. Tuchi
United States District Judge